## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PIERRE-Z RICARDO LASSETTI, IV,

                  Petitioner,                  Case Number: 18-14052
                                                    Honorable Paul D. Borman

v.

MICHAEL BURGESS,[1]

                  Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), (2) DENYING MOTION FOR EVIDENTIARY HEARING (ECF NO. 18), (3) DENYING CERTIFICATE OF APPEALABILITY, AND (4) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Pierre-Z Ricardo Lassetti has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is in the custody of the Michigan Department of Corrections, challenges his convictions for three counts of armed robbery and one count of bank robbery. He raises ten claims for relief.

For the reasons discussed, the Court denies the petition and denies a certificate of appealability. The Court grants Petitioner leave to proceed *in forma*

---

[1] The proper respondent in a habeas action is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Oaks Correctional Facility where Michael Burgess is the Warden. The Court directs the Clerk of Court to amend the case caption to substitute Michael Burgess as the respondent.

*pauperis* on appeal.

## I.     Background

Petitioner was charged in Genesee County Circuit Court with three counts of armed robbery and one count of bank robbery.  The trial court appointed defense attorney Raymond Correll to represent Petitioner.  Petitioner expressed his dissatisfaction with counsel multiple times prior to and during trial.  The trial court repeatedly declined to appoint substitute counsel because she saw no deficiencies in counsel's performance.  Ultimately, Petitioner chose to represent himself and Correll acted as advisory counsel.

The Michigan Court of Appeals summarized the testimony leading to Petitioner's convictions as follows:

> At approximately 10:45 a.m. on March 11, 2015, a lone masked man dressed in black, wearing dark gloves, and waving and pointing what some witnesses thought was a gun covered in a black cloth entered the Comerica Bank located in Southfield, Michigan, at Ten Mile Road and Telegraph Road.  It is undisputed that no one saw an actual weapon and that the robber did not verbally threaten that he had a gun. One after the other, the robber approached the window of three tellers and demanded that each give the robber her money.  Along with the money in their tills, two of the tellers gave defendant "bait money"[ ] and packets of money containing GPS trackers.  The GPS trackers activated, allowing police to know the direction and speed of travel of the trackers and the stolen money that concealed the trackers.  Using the information provided by the trackers and conveyed by dispatch, police stopped a black Dodge Charger in which defendant was the sole occupant.  Among the items on the passenger seat of the Charger was apparel matching the description of the clothes, gloves, and mask worn by the bank robber, and an empty conditioner or shampoo bottle; under the apparel was a bag of money containing the bank's bait

2

money and the GPS trackers. Police arrested defendant and charged him with three counts of armed robbery, and one count of bank robbery.

\*\*\*

Three tellers—Tiara Moore, Monique Shoulders, and Terri Smith—testified that they were present at the subject bank on the morning of March 11, 2015, when a man wearing a mask, a black hoodie, black jeans, and dark gloves entered the bank.  Each woman said she was afraid because the robber was waving and pointing what she thought was a gun covered with a black cloth.  Each woman testified that she complied with the robber's demand to give him her money; Shoulders and Smith also handed over their bait money and money concealing a GPS tracker.  They all testified that after the robber took the money, he left the bank, ran behind the building toward the drive-thru area, hopped over a wall, and disappeared.

Southfield police officer Aaron Huguley testified that dispatch was broadcasting updates of the location of the tracking devices, and that they were traveling toward the intersection of Nine Mile Road and Lahser road.  As Officer Huguley approached the intersection, he saw two vehicles: a Chrysler with two occupants, and a Dodge Charger one with one occupant. Based on the information he received from the tracking devices and dispatch's communication that police were looking for a lone suspect, the officer pulled behind the Charger, activated his lights, and made a traffic stop.  Other officers arrived on the scene at about the same time, among them, Officer Jeffrey Medici. Officer Medici testified that while the other officers were taking defendant into custody, he walked around the Charger and observed black clothing bunched up on the passenger seat.  Knowing that police were looking for a lone male dressed in black, Officer Medici opened the door and observed several items of black clothing, brown gloves, a black do-rag, a blackened empty bottle of hair conditioner inside a jacket pocket, and "a plastic bag with a lot of U.S. currency." Evidence technician and patrol officer Christopher Thomas testified that he recovered a white plastic bag full of money, a black do-rag, a black long-sleeved shirt, a black hoodie, a black pair of jeans, and an empty bottle of shampoo from the passenger seat of the Charger.  He further testified that some of the money disguised a GPS tracker pack,

which Paul Praddel, a lead investigator for Comerica Bank, identified as the bank's.  Thomas also testified that Praddel identified among the money recovered two packs of the bank's bait money.

On cross-examination, defendant [who was representing himself] elicited testimony from the tellers that they did not see a gun, nor did the robber make any verbal threats involving a gun.  Defendant also drew attention to alleged discrepancies in some of the witness's physical description of the robber at the time of the robbery and their description of the robber at trial.  Defendant's theory of defense involved two men who allegedly befriended him at the casino the night before the robbery.  Defendant gave them a ride in his Charger, dropping the first man off near the subject bank, and the second man at a house. While he was waiting for the second man to come out of the house, the person defendant believed to be the first man jumped into his car and told him to drive.  Defendant drove off, but then struggled with the man and ejected him from the car while retaining the man's plastic bag.  Defendant sought to establish this theory by asking Officer Thomas on cross-examination why he collected from the Charger only those items Thomas thought had evidentiary significance while leaving behind items defendant characterized as potentially exculpatory.  Defendant viewed Thomas's discriminatory recovery of evidence as tantamount to suppressing evidence that defendant claimed would have proved his theory.

*People v. Lassetti*, No. 332680, 2017 WL 5615694, at *1-3 (Mich. Ct. App. Nov. 21, 2017).

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of three counts of armed robbery, Mich. Comp. Laws § 750.529, and one count of bank robbery, Mich. Comp. Laws §750.531.  *Id.* at *3.  He was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.13, to 20 to 40 years for each conviction, to be served concurrently.  *Id.*

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised four claims through counsel and eight additional claims in a pro per supplemental brief.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *Id*.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court.  The Michigan Supreme Court denied leave to appeal. *People v. Lassetti*, 502 Mich. 902 (Mich. July 3, 2018).

Petitioner then filed this petition for writ of habeas corpus seeking relief on these grounds:

> I.      Petitioner Lassetti suffered a total deprivation of counsel throughout the pretrial proceedings as well as during the trial and sentencing due to an improper waiver of counsel because Defendant did not ask nor was he asked if he wished to represent himself.

> II.     The trial court improperly denied Petitioner's numerous requests made for substitute counsel where there had been a complete breakdown in the attorney–client relationship.

> III.    Petitioner was denied a fair trial under both the federal and state constitution when the prosecutor used suggestive identification tactics, went over admitted exhibits with the witnesses outside the presence of the jury prior to trial, coached the witnesses, vouched and bolstered their credibility, misrepresented facts in evidence, argued facts not in evidence, gave leading cross-examination, misled the jury expressing his personal opinion, denigrated the presumption of innocence.

> IV.     Petitioner Lassetti was denied due process of law where there was insufficient evidence presented at trial to support his convictions.

> V.      Petitioner's Sixth Amendment right of confrontation was denied when inadmissible hearsay statements by non-testifying witnesses were admitted against him.

VI.    Petitioner's due process rights under the Fifth and Fourteenth Amendment were violated when he was shackled in front of the jury.

VII.    Judicial bias denied Petitioner a fair trial.

VIII.    Petitioner was denied his Fourth Amendment right where there was no probable cause to arrest thus any evidence illegally obtained should have been suppressed.

IX.    The court lacked subject matter jurisdiction due to defective indictment and no enacting clause for the law cited against Petitioner.

X.    The cumulative effect of errors committed during Petitioner's trial constitutes reversible error because he did not receive a fair trial under federal and state constitutions.

Respondent filed an answer to the petition maintaining that Petitioner's third and sixth claims are procedurally defaulted and that all of his claims are meritless.

Under the doctrine of procedural default, a federal court generally may not review claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The procedural default doctrine is not jurisdictional and the Court may bypass this question where proceeding directly to the merits is more efficient. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority ..., if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). The Court will proceed to the merits of Petitioner's claims without deciding the procedural-default issue.

Petitioner also filed a motion for evidentiary hearing. (ECF No. 18.)  Title

28 U.S.C. § 2254 limits the facts that a federal court may consider on habeas

review.  When the state court decides a claim on its merits, the federal habeas court

"is limited to the record that was before the state court that adjudicated the claim

on the merits" because the federal habeas scheme was designed to leave "primary

responsibility with the state courts."  *Cullen v. Pinholster*, 563 U.S. 170, 181-82

(2011).  "[R]eview under § 2254(d)(1) focuses on what a state court knew and

did." *Id.*  The Michigan Court of Appeals issued a decision on the merits of

Petitioner's claims.  This Court therefore may not allow an evidentiary hearing to

supplement the existing state court record and the motion will be denied.  *Ballinger*

*v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).

## II.    Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires federal courts to uphold state court adjudications on the merits unless the

state court's decision (1) "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States," or (2) "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

## III.   Discussion

### A.  Sixth Amendment Claims

Petitioner's first and second claims concern his Sixth Amendment right to counsel.   First, Petitioner argues that the trial court erred in denying his request for substitute counsel when he reported that there was a complete breakdown in his relationship with his court-appointed attorney, Raymond Correll.  He maintains that the trial court's failure to remove unwanted counsel was the equivalent of a complete denial of counsel, constituting a structural defect.  Second, Petitioner maintains that his decision to waive counsel was involuntary because he was forced to choose between counsel he perceived to be unprepared and unwilling to zealously defend him and no counsel at all.

### 1.  Substitution of Counsel

Petitioner's dissatisfaction with counsel was made apparent to the trial court on multiple occasions.  On direct review, the Michigan Court of Appeals gave a detailed overview of Petitioner's complaints:

> At every pretrial hearing, prior to voir dire, and during the trial, defendant asked the court to replace Correll. The essence of defendant's accusations remained the same: Correll had been "unenthusiastic" in his motion to dismiss on the ground of a faulty indictment, had not challenged the prosecution's case with regard to the armed robbery charges, had failed to challenge the validity of the traffic stop that resulted in defendant's arrest, and was working with the prosecution against defendant. Defendant insisted that Correll had provided ineffective assistance, and that there was an irreparable breakdown in the attorney-client relationship. The trial court denied

9

defendant's motions to replace Correll, first as defense counsel and then as advisory counsel, on the ground that defendant had not shown good cause to replace him. The trial court repeatedly warned defendant that self-representation was not in his best interest, that the charges against him and the potential consequences of guilty verdicts were serious, and that Correll could provide adequate representation. Correll expressed his willingness to continue as defendant's defense counsel or as advisory counsel at the court's discretion. In addition to his repeated requests to dismiss Correll and a vigorous motion practice, defendant pursued and obtained a psychological evaluation and a plea agreement that he eventually rejected.

*Lassetti*, 2017 WL 5615694, at *2.

The Michigan Court of Appeals proceeded to find no error in the court's denial of Petitioner's request for substitute counsel. In a comprehensive and well-reasoned discussion, the Michigan Court of Appeals noted that Petitioner's differences with counsel "arose from [his] persistent, and in some instances willful, misapprehensions of the law and misrepresentations of the record" and that Correll worked zealously on Petitioner's behalf. *Lassetti*, 2017 WL 5615694, at *6-7. Further, the state court held that Petitioner "may not purposely break down the attorney-client relationship by refusing to cooperate with his appointed counsel and leveling unsubstantiated allegations against him and then assert good cause for a substitute counsel." *Id.*

The decision of the Michigan Court of Appeals was neither contrary to nor an unreasonable application of clearly established federal law. The Sixth Amendment guarantees defendants in criminal cases the right to adequate

representation, but not the right to be represented by a particular attorney. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Defendants who require counsel to be appointed for them do not have a right to counsel of choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). "[W]hen a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001). Accordingly, an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011). When evaluating a trial court's denial of a request to substitute counsel, a reviewing court considers the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *Henness*, 644 F.3d at 321.

The record supports the Michigan Court of Appeals' conclusion that counsel was actively engaged in preparing for Petitioner's defense and that the trial court carefully considered and assessed Petitioner's complaints.  The record also shows that Petitioner's own uncooperative behavior caused friction in the attorney-client relationship.  A defendant's refusal to cooperate does not constitute good cause for substitution of counsel.  *See United States v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009) ("[T]he record reflects that any lack of communication between [the defendant and his lawyer] was likely due to [the defendant's] refusal to cooperate.").  The Michigan Court of Appeals reasonably determined that Petitioner failed to establish good cause for appointing new counsel.

Finally, Petitioner's claim of structural error is meritless. The Sixth Amendment guarantees the right to counsel of choice for "a defendant who does not require appointed counsel," and the denial of counsel of choice in that situation results in structural error. *Gonzalez-Lopez*, 548 U.S. at 144 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  Petitioner's attorney was court-appointed. Because the right to counsel of choice has not been extended to indigent defendants who are represented by court-appointed counsel, Petitioner does not establish structural error.  Habeas relief is denied on this claim.

## 2.  Self-Representation

Next, Petitioner claims that his waiver of counsel was not knowingly, intelligently and voluntarily made.  He maintains that he did not ask to represent himself and that he continually asserted his desire to be represented by counsel.

A defendant's right to the assistance of counsel includes the related right to waive counsel and conduct his own defense.  *See Faretta v. California*, 422 U.S. 806, 807 (1975).  Before permitting a defendant to exercise his constitutional right to serve as his own attorney, however, the court must be satisfied that the waiver of appointed counsel is knowing and voluntary.  *See Godinez v. Moran*, 509 U.S. 389, 400 (1993).  A criminal defendant must "be made aware of the dangers and disadvantages of self-representation so that the record will establish that he 'knows what he is doing and his choice is made with eyes wide open.'"  *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

The Michigan Court of Appeals held that Petitioner's waiver was knowingly, voluntarily, and intelligently made.  The state court first explained that, while Petitioner indicated his "first choice" was for substitute counsel, "he unequivocally indicated to the trial court that, given the option of Correll's representation or self-representation, he chose the latter."  *Lassetti*, 2017 WL 5615694 at *8.  The trial court also "fully and repeatedly informed [Petitioner] of the disadvantages of self-representation, the seriousness of the charges against him,

13

and the likely sentence should the jury find him guilty." *Id.* The Michigan Court of Appeals also rejected Petitioner's contention that on the third day of trial he asked Correll to resume representing him. *Id.* Instead, Petitioner asked Correll to cross-examine one witness by reading questions that Petitioner would write down. *Id.* The court did not allow Correll to conduct the cross-examination but reminded Petitioner that he was free to consult Correll for guidance throughout the cross-examination. *Id.*

The Michigan Court of Appeals' decision was not an unreasonable determination of the facts or an unreasonable application of *Faretta.* The record fully supports the court of appeals' conclusion that Petitioner chose to represent himself. True, Petitioner repeatedly asked for substitute counsel, but also indicated he would represent himself rather than be represented by Correll. Petitioner maintains that because he wanted substitute counsel he also did not want to represent himself. The problem with this argument is that the trial court repeatedly held that Petitioner failed to show cause for the appointment of substitute counsel. Petitioner had a meaningful choice between competent counsel and self-representation. By rejecting competent counsel, Petitioner "necessarily chose self-representation." *King v. Bobby*, 433 F.3d 483, 492 (6th Cir. 2006). The fact that he was not pleased with his court-appointed attorney did not render his waiver of counsel involuntary. *See United States v. Mentzos*, 462 F.3d 830, 839 (8th Cir.

14

2006) ("[T]here is no constitutional difficulty where [a] defendant is provided the real alternative of choosing between adequate representation and self-representation."). "[A] defendant cannot be permitted to stop the criminal justice process in its tracks by rejecting appointed counsel and refusing self-representation." *Swiger v. Brown*, 86 Fed. App'x 877, 882 (6th Cir. 2004)

Lastly, to the extent that Petitioner's argument is that the trial court and Michigan Court of Appeals erred under state law, he fails to state a claim upon which relief may be granted. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state procedural law are not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

In sum, the Michigan Court of Appeals' finding that Petitioner's waiver of counsel was knowing, voluntary and unequivocal is reasonable and not contrary to the holding in *Faretta*. The record shows that the trial court carefully balanced Petitioner's right to counsel, but not to the counsel of his choice, and his refusal to be represented by a competent attorney. Relief is denied.

### B.  Prosecutorial Misconduct

In his third claim, Petitioner argues that the prosecutor's misconduct violated his due process rights.  Specifically, he maintains that the prosecutor used impermissibly suggestive identification techniques, vouched for the credibility of witnesses, gave his own opinion about Petitioner's guilt, misrepresented facts and argued facts not in evidence in closing argument, and incorrectly cited the elements of armed robbery.  He also claims that the cumulative effect of the prosecutor's misconduct denied him a fair trial.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned."  *Id.* at 181 (internal quotation omitted).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair."  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'"  *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)

16

(alteration in original). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

First, Petitioner argues that the prosecutor used several impermissible identification techniques. For example, he maintains that the witnesses identified him as the robber because police reported that they apprehended the suspect and that "the robber" was going to represent himself at trial. He also claims it was improper for the prosecutor to meet with the bank teller witnesses before trial and review the bank video with them.

The Michigan Court of Appeals found no support in the record for Petitioner's factual allegations that the prosecutor told witnesses that "the robber" was going to represent himself at trial. The record supports this conclusion. The state court further held that it was not improper for the prosecutor to meet with witnesses prior to the trial. The court reasoned that the jury was made aware of the pre-trial meetings and it was the jury's role to decide what, if any, impact the meetings had on the witnesses' credibility. *Lassetti*, 2017 WL 5615694 at *9. Petitioner does not cite any Supreme Court precedent stating that a prosecutor

commits misconduct by meeting with and preparing a witness to testify and the Court is aware of none. *See Wagner v. Birkett*, No. 1:10-cv-425, 2014 WL 4386333, *15 (W.D. Mich. Sept. 3, 2014) (rejecting petitioner's suggestion that it is improper for a prosecutor to prepare a witness for the questions the prosecutor intends to ask at trial); *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007) (prosecutors are entitled to prepare their witnesses before trial). The state court's denial of this claim, therefore, was not contrary to, or an unreasonable application of, *Darden*.

Petitioner asserts that the prosecutor improperly asked leading questions of the State's witnesses. While a handful of the prosecutor's questions were leading, the prosecutor did not use the questions to elicit otherwise inadmissible testimony and even if the questions were improper they fell far short of rendering Petitioner's trial fundamentally unfair.

Next, Petitioner alleges that the prosecutor's closing argument was improper because he vouched for the credibility of witnesses, gave his own opinion about Petitioner's guilt, misrepresented facts, argued facts not in evidence, and incorrectly cited the elements of armed robbery. The Michigan Court of Appeals held that the prosecutor did not vouch for the credibility of witnesses or give his own opinion about Petitioner's guilt. Instead, the prosecutor properly argued that the facts in evidence supported the witnesses' testimony and that the evidence was

sufficient to prove Petitioner's guilt beyond a reasonable doubt. *Lassetti*, 2017 WL 5615694 at \*9. The Michigan Court of Appeals further held that the prosecutor properly "argued from facts in evidence and reasonable inferences form those facts" and properly focused on evidence unfavorable to Petitioner. *Id.* Finally, the court held that the prosecutor did not misstate the law in closing argument and that, even if he had, any error was cured by the trial court's instructions which accurately stated the elements of the crimes and directed the jury to follow the law as given by the trial court. *Id.* at \*10.

The Michigan Court of Appeals' decision was reasonable and supported by the record. The prosecutor's closing argument fairly represented the evidence presented, did not misstate the law, and argued Petitioner's guilt based only on the evidence presented. The prosecutor did not ask the jury to convict based upon his own personal belief in Petitioner's guilt or imply that he had evidence not presented to the jury which supported the charges against Petitioner.

Petitioner has not shown that the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

Finally, Petitioner argues that the cumulative effect of the prosecutor's misconduct denied him his right to a fair trial. The Court has found no instances of misconduct. Meritless individual claims of error cannot by accumulation create constitutional infirmity. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) ("[T]he accumulation of non-errors cannot collectively amount to a violation of due process.").

## C. Sufficiency of the Evidence

In his fourth claim, Petitioner argues that constitutionally insufficient evidence was presented at trial to support his convictions. He maintains that the prosecutor failed to establish his identity as the shooter and failed to prove the "armed" element of armed robbery.

On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's*

20

sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (emphasis in *Brown*).

Under Michigan law, the elements of armed robbery are: "(1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 520 N.W.2d 672, 673 (1994). A person is guilty of bank robbery when, "with intent to commit the crime of larceny [the person] shall put in fear any person for the purpose of stealing from any ... bank ...." *Id.* (citing Mich. Comp. Laws § 750.531).

After reciting the controlling constitutional standard, the Michigan Court of Appeals denied the claim on the merits.  First, the state court addressed the identity element and found sufficient evidence to identify Petitioner as the robber.  The court relied on this evidence: Petitioner's vehicle was tracked via the GPS trackers from the bank, and when police performed a traffic stop using information from the GPS trackers, they found the clothing, money and GPS trackers associated with the bank robbery in Petitioner's vehicle.  *Id.* at *3-4.

The Michigan Court of Appeals also determined that sufficient evidence was presented to sustain Petitioner's armed robbery convictions.  Petitioner maintained that the prosecution failed to show that he had a weapon and that, contrary to witnesses' testimony, his hands were visible through most of the robbery.  Under

Michigan law, a defendant need not be armed with an actual weapon to satisfy the "armed" element of armed robbery. *Id*. at *4. Instead, the armed element is satisfied if the defendant possessed an object "used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon." *Lassetti*, 2017 WL 5615694, at *4 (citation omitted). "[F]ingers or a hand obscured by some item and accompanied by verbal or gesticulatory threats can qualify as an 'object'" satisfying the "armed" element. *Id*. at *5. In this case, the three tellers testified that Petitioner appeared to have an object in his hand wrapped in a cloth that, based upon his behavior, they each believed was a weapon. Each teller testified that she was frightened and complied with the robber's demands to give him money.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. Viewing the evidence under the proper standard -- in a light most favorable to the prosecution -- the Court concludes that Petitioner fails to clear the "nearly insurmountable hurdle" for petitioners seeking habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (internal citation omitted).

### D.  Confrontation Clause

Petitioner's fifth claim concerns admission of hearsay testimony.  He argues that the trial court violated his right to confrontation when it allowed Christopher Hill, a bank security guard, to testify that an employee of a nearby business told him that a person had just jumped over a fence and gotten into a black Dodge Charger or Chevrolet Impala.

Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court.  *See Crawford v. Washington*, 541 U.S. 36 (2004).  The Confrontation Clause has no application to non-testimonial statements.  *Whorton v. Bockting*, 549 U.S. 406, 420 (2007).  Statements "are testimonial when ... the primary purpose ... is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

The Michigan Court of Appeals found that even if testimony was improperly admitted, any error was harmless. *Lassetti*, 2017 WL 5615694, at *7.  The state court reasoned, in relevant part:

> After a thorough examination of the record, we conclude that, even if the trial court admitted Hill's testimony in error, the error was harmless beyond a reasonable doubt.  Defendant was apprehended based largely on information supplied by GPS tracking devices

concealed in the stolen money. There is no record evidence that Hill relayed the information he received from the employee to Comerica's security center, or that it was instrumental in law enforcement's apprehension of defendant. Officer Hughley testified that he received no information regarding the type of vehicle the suspect might have been driving. Given the strength of the prosecution's case without Hill's testimony, the relative insignificance of Hill's testimony, and the fact that other evidence corroborated his testimony, we find it "clear beyond a reasonable doubt that a rational jury would have found defendant guilty absent the error." *Shepherd*, 472 Mich. at 348 (quotation marks and citation omitted). Therefore, any Confrontation Clause error arising from admission of Hill's hearsay testimony was harmless beyond a reasonable doubt. *Id*. at 347.

*Id.*

On federal habeas review, relief may not be granted "based on trial error unless [a petitioner] can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Further, a state court's decision that an error was harmless constitutes an adjudication "on the merits" to which the highly deferential AEDPA standard applies. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). Thus, this Court may not grant relief unless the state court's "'*harmlessness determination itself* was unreasonable.'" *Id*. (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)) (emphasis in *Fry* and *Davis*). *See also Langford v. Warden*, 665 F.

24

App'x 388, 389 (6th Cir. 2016) (where the state court held that any error was harmless courts on collateral review must "give a heightened degree of deference to the state court's review of a harmless error decision").

The Court sees nothing in the record which would call into question the Michigan Court of Appeals' determination that any error was harmless. Relief is denied on this claim.

### E.  Shackling

Next, Petitioner seeks relief on the ground that he was denied a fair trial when jurors saw a deputy place him in shackles.  On the fifth day of trial, standby counsel informed Petitioner and the court that the jury was still in the process of exiting the courtroom when Petitioner was placed in shackles.  (ECF No. 10-19, PageID.698-99.)  In response, Petitioner stated that he did not believe any jurors saw him being placed in shackles, that he was not prejudiced because the jurors already knew he was incarcerated, and that he did not want to move for a new trial on this basis.  (*Id.*)

The Michigan Court of Appeals denied this claim on two grounds.  First, the state court held that Petitioner waived this issue by declining to move for a new trial.  *Lassetti*, 2017 WL 5615694, at *8.  Second, the court found no error because Petitioner failed to show prejudice.  *Id.*

In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629. *Deck,* however, "concerned only visible restraints at trial. The Supreme Court was careful to repeat this limitation throughout its opinion." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008). "Restraining a defendant in the courtroom, and restraining him during transport there, are two very different things." *Id.* at 655 (citing *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir.1991)). "[I]t is *reasonable* for law enforcement officers to transport custodial criminal defendants to and from courthouses across the country with restraints.... And jurors may well *expect* criminal defendants – at least ones charged with the kind of conduct at issue here [assault with intent to commit murder] – to be restrained during transport to the courtroom." *Id.* (internal quotation marks omitted).

Petitioner has not shown that jurors saw him in shackles and even if jurors observed him being shackled, he was being prepared for transport from the courtroom. The Supreme Court has not held that a defendant's constitutional rights are violated when jurors see a defendant shackled during transport. Therefore, the Michigan Court of Appeals' decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### F.  Judicial Bias

Next, Petitioner argues that he was denied a fair trial by the trial court's bias in favor of the prosecutor and standby counsel.  An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  The Supreme Court established the standard for assessing claims of judicial bias in *Liteky v. United States*, 510 U.S. 540 (1994).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Id.* at 555.  A judge's remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."  *Id*.  Even a judge's expressions of "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not, standing alone, establish a due process violation.  *Id*. at 555-56.

The Michigan Court of Appeals denied this claim finding that the trial judge acted within the wide discretion and power afforded trial courts in ensuring that trials proceed in an orderly fashion.  *Lassetti*, 2017 WL 5615694 at *10.  On habeas review the inquiry focuses on whether the trial judge's conduct rendered the trial fundamentally unfair.  "To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree."  *McBee*

*v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985).  Although Petitioner disagrees with many of the trial court's rulings, he has not shown that the judge relied on extrajudicial sources in rendering her decisions or that she showed any degree of favoritism for the prosecution or standby counsel or antagonism for Petitioner. The trial transcript shows the trial judge ruled carefully on objections.  The Michigan Court of Appeals decision denying this claim easily withstands scrutiny under the AEDPA standard and relief is denied on this claim.

### G. Fourth Amendment

Petitioner next argues that his Fourth Amendment rights were violated because police did not have probable cause to stop his vehicle or arrest him and the evidence retrieved from his vehicle should have been suppressed.  The Michigan Court of Appeals denied this claim because police had an articulable and reasonable suspicion that Petitioner had violated the law and probable cause existed to arrest Petitioner on suspicion of bank robbery.  *Lassetti*, 2017 WL 5615694 at *11.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475 (1991).  The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted

28

federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich.2005). Petitioner filed a motion to suppress in the trial court, which was denied. Petitioner raised the Fourth Amendment claim on direct appeal. The Michigan Court of Appeals considered and rejected this claim on the merits. *Lassetti*, 2017 WL 5615694 at *11.

Petitioner makes no allegations that presentation of his Fourth Amendment claim was frustrated by a failure of the state court procedures for presentation of that claim. Accordingly, habeas relief is denied.

### H. Subject-Matter Jurisdiction

In his ninth claim, Petitioner argues that the trial court lacked subject-matter jurisdiction over his case.

The determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); *see also Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Petitioner's claim that the Michigan courts lacked jurisdiction rests

only on alleged violations of the state court rules and procedures.  A habeas

petitioner is not entitled to habeas relief based upon an alleged violation of the

state law.  *See Hudson v. Berghuis*, 174 F. App'x 948, 952, n.1 (6th Cir. 2006).

Federal due process does not require state officials to follow their own procedural

statutes and rules.  *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994).  This

claim is denied.

## I. Cumulative Effect of Alleged Errors

Finally, Petitioner asserts that he is entitled to habeas relief based upon

cumulative error.  The Court rejects Petitioner's claim because the Supreme Court

has never held that cumulative errors may form the basis for issuance of a writ of

habeas corpus.  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); s*ee also

Daniels v. Jackson*, 2018 WL 4621942, *6 (6th Cir. July 17, 2018) (("'[T]he law of

[the Sixth Circuit] is that cumulative error claims are not cognizable on habeas

[review] because the Supreme Court has not spoken on this issue.'") (quoting

*Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).  This cumulative-error

claim, therefore, is not cognizable on habeas corpus review.

## III. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not

proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. §

2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that

the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the claims in the habeas petition do not warrant relief. Therefore, the Court denies a certificate of appealability.

## IV. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. Further, the Court DENIES a certificate of appealability and DENIES Petitioner's motion for evidentiary hearing (ECF No. 18). The Clerk of Court is directed to amend the case caption to substitute Michael Burgess as the respondent.

The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

                                        s/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated: March 14, 2022